## John W. Preston v. The State.

### No. 1999. Decided October 11, 1899.

Motion for Rehearing Decided December 11, 1899.

**1. Plea of Former Jeopardy and Acquittal—Forgery and Uttering Forged Instrument.**

Forgery and uttering a forged instrument are separate and distinct offenses, and not necessarily involving the same evidence; and, under provisions of article 549a, Penal Code, it is only in cases of a "conviction," and not in cases of "acquittal," that a special plea of conviction will bar a further prosecution.

**.2. Same—Striking Out Plea—Practice.**

Where the indictment on which defendant is tried and the plea in bar show distinct offenses, not susceptible of being proved as the same identical case, and in the former case an acquittal is shown, the court may strike out the plea of former jeopardy without submitting it to the jury.

**3. Defendant as Witness—Reproducing Defendant's Testimony Given on Former Trial.**

Where a defendant testifies in his own behalf, it will be presumed that it was voluntarily done after full consultation with his counsel, and with full knowledge of his rights in the premises. The statute as to warning does not apply in such a case, and defendant's testimony so given can be reproduced and used against him at any subsequent trial of the case.

**4. Impeachment of Witness.**

A witness can not be impeached by proof that he, the witness, had made out and sworn to a false account against the State as a witness upon the trial of defendant in another case. A witness can only be impeached by showing that he has been legally charged with some offense such as a felony or misdemeanor imputing moral turpitude.

**5. Accomplice Testimony—Charge Submitting the Issue.**

On a trial for the forgery of a deed, where there was evidence strongly implicating the officer who took the acknowledgment as a party to the crime, which was strenuously denied by him, and the court in its charge submitted to the jury the issue as to whether he was an accomplice, and it was insisted that the charge was erroneous because it did not instruct the jury, in terms, that the said witness was in fact an accomplice; Held, the better practice is, in such case, to submit the issue of whether or not he was an accomplice to the jury under proper instructions defining what an accomplice is. Following Martin v. State, 38 Texas Criminal Reports, 402.

**6. Forgery—Corroboration of Accomplices.**

See opinion for facts stated, on a trial for the uttering of a forged deed to land, which the court holds amply sufficient to corroborate the testimony of accomplices as to the fact that defendant knew the deed was a forgery, which he had procured to be executed by a party falsely personating the true owner, and which, after execution, he filed for record knowing it to be thus forged.

**·7. Refused Instructions—Practice on Appeal.** ·

On appeal, the court will not consider complaints predicated upon refused instructions, where there was no bill of exceptions taken, and no complaint as to the refusal of said instructions in the motion for new trial.

**8. Charge—Singling Out Testimony.**

On a trial for uttering a forged instrument, the court is not required to single out certain testimony as a test in determining the matter of the forgery of the instrument in question.

**9. New Trial—Newly Discovered Evidence.**

A new trial will not be granted for newly discovered evidence which is merely cumulative, or where it is only of an impeaching character.

ON MOTION FOR REHEARING.

**10. Reproducing Defendant's Testimony Adduced on Former Trial.**

While our statute provides that the former conviction of a defendant shall not be alluded to on his subsequent trial, this affords no reason why his testimony given on the former trial can not be reproduced. The mere introduction of such testimony does not necessarily suggest a former conviction.

**11. Same—Defendant's Failure to Testify.**

The fact that the statute inhibits any allusion to defendant's failure to testify is no reason why his testimony given at a former trial can not be reproduced, and it is competent for the State to introduce such evidence against him, although he has not taken the stand as a witness on his subsequent trial.

**12. Uttering Forged Instrument—Circumstantial Evidence.**

On a trial for uttering a forged instrument, the guilty knowledge of defendant can be proved by circumstantial evidence.

APPEAL from the District Court of Travis. Tried below before Hon. R. E. BROOKS.

Appeal from a conviction of uttering a forged instrument in writing; penalty, eight years imprisonment in the penitentiary.

This is a second appeal in this case. The first appeal is Preston v. State, 40 Texas Criminal Reports, 72, and it will be found to contain quite an elaborate statement of all the material facts involved in the prosecution.

On this trial, defendant again pleaded former jeopardy and acquittal, in the District Court of Bexar County, for the offense of forging the deed declared upon in the indictment in this case. The district attorney filed a demurrer and exceptions to this plea, which were sustained by the court, and said special plea was stricken out without having been submitted to the jury to be passed upon by them.

Defendant testified at the first trial of the case. He did not testify at the subsequent trials. On this, the third trial in the lower court, H. L. Spain, who was on the jury at the first trial, was called by the State, and over objections of defendant was permitted to testify as to what defendant had sworn when testifying as a witness on said first trial. Defendant reserved his bill of exceptions to this ruling of the court.

Burk and Nicholson, two of the witnesses who testified for the State, were confessed accomplices, and the court instructed the jury that they were accomplices. As to the State's witness Maddox, the court submitted to the jury for their finding whether he was an accomplice or not. The evidence with regard to these three witnesses, showing their connection with the matter as accomplices, as well as the evidence tending to corroborate their testimony, is so fully stated in the opinion of the court below that it is deemed unnecessary to make any additional statement.

*W. M. Walton, Rector & Rector, T. W. Hankinson,* and *Moore & Moore,* for appellant.—The court erred in sustaining the demurrer and exceptions of the district attorney to defendant's special plea of former

jeopardy and acquittal in the District Court of Bexar County, Texas, of the offense of forging the deed mentioned in this indictment, which said special plea set up that offense therein charged against defendant was in truth and in fact the offense herein charged, and it was error for the court to strike out said special plea.

Among other things contained in said special plea is the following statement sustained by the oath of defendant: "Defendant now here represents to the court that in order to convict the defendant in this case of knowingly passing said forged instrument as true, the State will first have to show that this defendant forged said instrument, and in order to do so will have to rely upon the same evidence adduced in said District Court of Bexar County, Texas, that this defendant did in fact forge said instrument. That all the facts adduced in evidence in the District Court of Bexar County, Texas, and the facts that will be adduced in evidence on this trial, are the same, and will show that the offense therein charged and the offense herein charged are one and the same offense in law and fact."

The effect of striking out the special plea is equivalent to holding that the facts alleged constitute no defense to the prosecution of this case, although every fact alleged may be true. It is respectfully urged that the court did wrong in so holding in this particular case. It is admitted that ordinarily an acquittal for forgery does not bar a prosecution for passing the forged instrument. But in this particular case the contention of the State is, and has always been, that the defendant forged the deed. The witnesses for the State so contend, and have always so claimed. They place the defendant in a particular room, at a particular table, on a particular day, and they swear that, then and there, the offense was committed with a particular pen and ink then present. And it nowhere appears in the record that the defendant had any means of information or knowledge that the deed from Felps to Preston was a forged instrument, except such as he may have had at the place and on the day when the instrument was forged as described by said witnesses. The State is held to the time, place, and incident as fixed by the witnesses. These same witnesses testified in San Antonio and the jury acquitted. If defendant is not guilty as claimed by the State's witnesses, then he is not guilty at all. If he did not forge the instrument, as testified to by the witnesses, he is not guilty herein, because it can not be contended that he had guilty knowledge otherwise. His guilty knowledge of the forged paper is limited by the statement of witnesses, and when they fix the character of his guilt to be that of the forger and that alone, a verdict of a jury acquitting him is a vindication, and the judgment of the court should be a bar as to all the facts settled by that judgment. Of what benefit to the defendant has been his acquittal, if the same issue, by the same witnesses, can be raised again and treated as if it had never been decided?

If the State had presented other witnesses and other facts establish-

ing guilty knowledge that the paper was forged, the case and the law would be different; but in this case the defendant is a guilty participant in the forgery of the deed or else he is innocent; and as to that question the District Court of Bexar County said that he was not guilty. We think the court erred in striking out the plea and in not permitting proof thereunder.

The court erred in permitting the State, over the objection of defendant, to place H. L. Spain on the stand and to reproduce the testimony of defendant, when on the stand as a witness in his own behalf on the trial of this cause in this court in May, 1897. Because (1) the action of the State was tantamount to putting the defendant on the stand as a witness against himself, and forcing him to testify against himself. Because (2) it appeared that the defendant, when testifying, was at the time under arrest and not warned. Because (3) it put the defendant in the attitude of an impeached witness, by the testimony of other witnesses, upon facts material and immaterial, and said testimony was not limited by the court in its charge, and they were nowhere informed that said testimony could not be received or considered for said purpose; and that said reproduced evidence could not be received as evidence of guilt. All of which is set up in bill of exceptions number 3 and in motion for new trial. Wills. Crim. Stats., art. 598; Wills. Crim. Stats., art. 750; Wood v. State, 22 Texas Crim. App., 431; Raines v. State, 33 Texas Crim. Rep., 294; Phillips v. State, 35 Texas Crim. Rep., 480; Thompson v. State, 35 Texas Crim. Rep., 511; Morales v. State, 36 Texas Crim. Rep., 234; Wright v. State, 36 Texas Crim. Rep., 428.

A defendant can testify or not, as he pleases, and whether he does or not is no concern of the State. Richardson v. State, 33 Texas Crim. Rep., 519. Even had the defendant been convicted on the first trial (which was not the case), and had been granted a new trial, he would then have been, with reference to all his rights, in the same condition as if he had never been tried. Wills. Crim. Stats., art. 783.

This court has decided that the defendant need not testify, but if he does, that his credibility as a witness is subject to the same attack as other witnesses. Hutchins v. State, 33 Texas Crim. Rep., 300.

This court has also decided that the evidence used in attacking the credibility of the defendant, as a witness, is used only for the purpose of impeaching, and that it can not be considered by the jury for the purpose of proving guilt, or as corroborating testimony, or as original testimony for any purpose whatever. And it is made the imperative duty of the trial court to limit and restrict such evidence to the purposes for which the law admits it. Phillips v. State, 35 Texas Crim. Rep., 480; Raines v. State, 33 Texas Crim. Rep., 294.

And the court has more recently decided that statements made by defendants, when in custody and unwarned, can not be used even for impeaching purposes. Morales v. State, 36 Texas Crim. Rep., 244, 245. Because the court believed that giving to defendants the right

to testify was intended as an enlargement and not as a curtailment of their rights. Morales v. State, 36 Texas Crim. Rep., 245.

The object of articles 749 and 750, Willson's Criminal Statutes, is to provide for the admission in evidence of confessions of guilt by the defendant—he being at the time in custody. And so particular is the law in protecting human liberty that it will not allow even a confession of guilt to be used against a defendant if he was in jail or in custody, unless such confession was a voluntary statement taken in writing before an examining court, or be voluntarily made after having been first cautioned.

It is not claimed or pretended that the defendant's statement was a confession. On the contrary, it was directly and pointedly a denial of guilt.

So careful is the State of the liberty of a man that he is not allowed to come into court and plead guilty without being fully warned of the consequences of the plea. Paul v. State, 17 Texas Crim. App., 583.

The court erred in refusing to permit the defendant to show by the witness Burk, on cross-examination, that he, Burk, had made out and sworn to a false account against the State as a witness on the trial of defendant in Atascosa County. Carroll v. State, 32 Texas Crim. Rep., 431.

The defendant asks the court to charge the jury: "The evidence in this case shows (if the deed mentioned in the indictment was forged) that the State's witnesses, Nicholson, Burk, and Maddox, were connected with said forgery, and neither of said witnesses can in law corroborate each other; nor can you consider the testimony of either of said witnesses in arriving at the conclusion of defendant's guilt, unless such testimony is corroborated by other evidence outside of said witnesses, tending to connect the defendant with the offense of filing said deed for record, knowing it to be forged."

The court did charge the jury that Burk and Nicholson were accomplices. If Maddox was an accomplice the court should have so charged as to him, and the testimony was such as to authorize the court to charge that way. Sessions v. State 37 Texas Crim. Rep., 58; Williams v. State, 37 Texas Crim. Rep., 440; Barrara v. State, 42 Texas, 260; Williams v. State, 42 Texas, 392.

The court submitted the question to the jury as to whether Maddox was an accomplice. But the jury made no finding upon the question. We believe, as found by the Court of Appeals in the case of Sessions v. State, 37 Texas Criminal Reports, 60, that on investigation you will find that there is no reasonable doubt, in law, that Maddox is an accomplice, "and that the court should have instructed the jury to that effect." Barrara v. State, 42 Texas, 260.

*Warren W. Moore*, District Attorney of the Twenty-sixth Judicial District, and *Rob't A. John*, Assistant Attorney-General, for the State,

filed a most able and elaborate argument on the issue of the corroboration of the accomplices testimony.

After the first opinion below was delivered, affirming the judgment, counsel for appellant filed the following motion for rehearing:

Appellant moves the court for a rehearing and a reversal of this case, for the following reasons:

1. The court committed error in not holding under the assignments of error, fourth, ninth, and eleventh, to the effect that the trial court committed error in allowing the State on the trial, as original and practically in effect convicting matter, to reproduce as part of its main case; and as evidence in chief for the purpose of making out its case, by the witness H. L. Spain, what the defendant swore in 1897, when he voluntarily went on the stand in his own behalf. Because:

(1) The said testimony was not reproduced for the purpose of impeaching defendant as a witness in his own behalf, nor for the purpose of contradicting him as a witness, for he had not been on the stand as a witness on the trial at all.

(2) While the procedure was not to directly place defendant on the stand as a witness, and compel him to testify against himself, it was to all intents and purposes and in practical effect the same thing in law, because it was to place him on the stand over his objection, and compel him to testify against himself through the mouth of Spain. What were the facts: Defendant was tried in 1897, at which trial he went on the stand and testified; there was a mistrial. He was then tried in 1898; he did not go on the stand as a witness; convicted, and reversal had. Tried in 1899; he did not go on the. stand. To overcome the principle announced in the reversal and the facts in evidence, it became necessary, absolutely so, to have corroboration of the State's witnesses. To obtain it (apparently obtain it), what was sworn to by defendant in 1897 when on the stand for himself was resurrected as affirmative, criminative, and convicting (apparently) matter, and used against him. The practical effect of this proceeding is perfectly terrible, tearing down and destroying the guarantee of the Constitution of the United States that a defendant "in a criminal case can not be compelled to be a witness against himself;" and so it destroys the protection of the State Constitution on the same subject,—"he shall not be compelled to give evidence against himself." Const. U. S., art. 5; Const. Texas, art. 1, sec. 10.

(3) When the defendant had testified, and a mistrial ensued, the trial and its incidents were obliterated, save only, according to the decision of this court, they can be reproduced to impeach or contradict defendant if he swears differently on another and different trial. This is carrying the doctrine to the verge of maintainability. It is doubtful if reason, right, logic, regard for the Constitution, or respect for human life and liberty, will approve and uphold the rule announced in the Collins case, 46 Southwestern Reporter, by this court, and referred to

41st Crim. Rep.—20

in the opinion in this case, to sustain itself in affirming the decision in this case. The Collins case is very far removed from the one at bar. That case as decided, if we regard the principles laid down by Mr. Cooley, is outside the law and fatally invades defendant's protected territory: Thus: "These statutes [giving defendant right to testify] can not be construed to authorize compulsory process against the accused to compel him to disclose more than he chooses; * * * they confer a privilege; * * * and if he does testify he is at liberty to stop at any point he chooses; * * * otherwise, the statute must have set aside and overruled the constitutional maxim which protects an accused party against being compelled to testify against himself, and the statutory privilege becomes a snare and a danger."

The Collins case was where a defendant had testified for himself at one trial and at another crossed himself on material matters, and the State was allowed to reproduce what was said on the first trial to impeach the witness by contradictory statements. As stated, this is the very verge to which the rule can be lawfully carried. To go further is to set aside the Constitution, State and Federal, and to enter the domain of wrong and error.

The court will not question the fact that if defendant's statements on the trial in 1897 had not been reproduced there would not have been any corroboration of the accomplices on the trial, and an acquittal would have been legally inevitable. If this be so, then it follows as truth that the State has been permitted to put defendant on the stand through Spain, and compelled him to convict himself.

The court certainly is in misapprehension when, in its opinion, it says, through the speaking judge: "We hold here as we did in that case [Collins] that where a defendant takes the stand on his own behalf, we will presume that it was voluntarily done on his part, and after full consultation with his counsel; and with the knowledge of his rights in the premises. He is then under the protecting ægis of the court, and the statute as to warning in such cases does not apply," etc. Wholly a non sequitur. The "protecting ægis of the court." What is meant by that expression? Is it not a delusion and a snare? Will the court analyse it and the surrounding situation, and when and where it is used? If it means anything, it means due, ample, honorable, and sure protection, that the ward of the ægis shall not be deluded, deceived, or misled to his injury, harm, or hurt; but here the court sits silent, the defendant under arrest, his bond suspended, and he passes from the jail to the bar, in the custody and under the restraint of the sheriff. He is about to speak. The court is silent. The man is not warned. He speaks,—words of death unto himself if at another day they are reproduced against him,—and yet because the words were spoken in the court's presence, and the presence of his attorney, they are sacred, sanctified, and under the ægis of the court. That reasoning will not do in the presence of the law and the Constitution. We think not.

There are other reasons, and strong ones, in support of our first proposition, and we ask the court to hear us in discussion of them, orally, if the court will so far indulge us.

2. There was no corroboration of the accomplices.

(1) Nicholson and Burke are confessed accomplices.

(2) Maddox does not corroborate them in anything tending to show the forgery of the deed.

(3) Maddox was an accomplice. If his being an accomplice had been submitted as a special issue to the jury and they had found no, the verdict would have been set aside as not being sustained by the evidence.

(4) All three were accomplices and were not corroborated by aught that was drawn from defendant through the mouth of Spain.

(5) The conviction rests on the uncorroborated testimony of three accomplices. The three are not stronger than one.

Such being record facts, this court erred in affirming the judgment of the trial court.

3. In framing the opinion of the court, it was error to take into consideration, reflections, deductions, and inferences of guilt either from uncorroborated facts, opportunity to commit the crime charged, desire to acquire the land, or the motives of the defendant when discussing the question of corroboration or no corroboration of the accomplice witnesses, for they nor any of them, singly or together, showed nor tended to show corroboration, which was so necessary to the integrity of the conviction.

*Duncan & Jones*, for appellant, filed a most able printed argument in support of the motion for rehearing.

HENDERSON, JUDGE.—Appellant was convicted of passing as true a forged instrument in writing, and his punishment assessed at eight years confinement in the penitentiary, and he appeals.

This is the second appeal in this case. For the opinion reversing the case at a former term of this court, see 40 Texas Criminal Reports, 72.

Appellant's first assignment of errors involves the action of the court in striking out his special plea of former jeopardy and acquittal in the District Court of Bexar County, the plea in question setting out in proper form the trial and acquittal of the defendant on an indictment for forging the deed which he is charged to have uttered in the present indictment, and it is said that they are one and the same transaction, and that the same evidence necessary to a conviction in this case was adduced, and was requisite to be adduced, on the former trial. It can not be urged that the forging and uttering the same forged instrument are not made by our statute two distinct offenses, and, prior to the Act of 1895, a conviction for one offense did not bar a prosecution for the other. Penal Code, art. 549a. But it will be noted that said

article makes a conviction, and not an acquittal, a bar. Green v. State, 36 Texas Crim. Rep., 109. Where the indictment on which a defendant is being tried and the plea in bar show distinct offenses, as, in this case, not susceptible of being proved as the same identical case, and in the former case an acquittal is shown, the court may strike out the plea of former jeopardy. Wright v. State, 37 Texas Crim. Rep., 627; Byas v. State, ante, p. 51. As was said by the Supreme Court in Wilson v. State, 45 Texas, 77: "The rule to be adduced from the authorities is that, where the offenses charged in different indictments are so diverse as not to admit of proof that they are the same, the court may decide the issue without submitting it to the jury." While it is true the evidence of the forgery must be adduced in the trial of this case for uttering the alleged forged instrument, this is only adduced for the purpose of showing scienter on the part of the appellant, and for the purpose of establishing the basis for the prosecution for uttering said instrument. If the case stopped there, appellant would be entitled to an acquittal; and before he could be convicted the State would be required to go further, and show the additional fact of passing said instrument. In the trial for the forgery, proof of the uttering of the forged instrument may not have been necessary. If necessary, it would not be for the purpose of procuring a conviction for the forgery, but merely to show guilty knowledge on the part of the alleged forger. There was no error in the action of the court in striking out the plea of former acquittal for the offense of forgery. It is admitted by counsel for appellant that the rule above stated ordinarily holds good, but that, under the facts of this particular case, the rule does not apply. It is insisted, as we understand it, that inasmuch as the State insisted in the former prosecution that appellant forged the deed which he is alleged in this case to have uttered, and because of his acquittal in the former case, that the plea in bar ought to be held good, because it has been decided by a jury of his peers that appellant did not forge the alleged deed. If we concede this contention to be sound, it would follow that in every case of forgery where the jury may have failed to discharge their duty, or there was some lack of testimony to convict a defendant, he could not be subsequently prosecuted for uttering said forged instrument.

Appellant contends that the court erred in permitting the State, over the objections of the defendant, to place H. L. Spain on the stand, and to reproduce the testimony of defendant when on the stand as a witness in his own behalf on the former trial of this case, in May, 1897, because (1) the action of the State was tantamount to putting the defendant on the stand as a witness against himself, and forcing him to testify against himself; (2) it appeared that the defendant, when testifying, was at the time under arrest, and not warned; (3) it put the defendant in the attitude of an impeached witness by the testimony of other witnesses, upon facts material and immaterial, and said testimony was not limited by the court in its charge, and the jury were nowhere informed

that such testimony could be received or considered for such purpose, and that such reproduced evidence could not be received as evidence of guilt. It is not necessary here to discuss the question whether or not, when a defendant takes the stand on his own behalf at a former trial of the same case, his testimony then given can be used against him on a subsequent trial, as that matter was gone into thoroughly in Collins v. State, 39 Texas Criminal Reports, 441. We hold here, as we did in that case, that, where a defendant takes the stand on his own behalf, we will presume that it was voluntarily done on his part, and after full consultation with his counsel, and with the knowledge of his rights in the premises. He is then under the protecting ægis of the court, and the statute as to warning in such cases does not apply, and testimony so given can be used against him at any subsequent trial of the same case. And see, also, Whart. Crim. Ev., sec. 664; People v. Kelley, 47 Cal., 125; State v. Glass, 50 Wis., 218, 6 N. W. Rep., 500.

There was no error in the action of the court refusing to permit the defendant to show by the witness Burke, on cross-examination, that he, (Burke) had made out and sworn to a false account against the State as a witness on the trial of the defendant in Atascosa County. Carroll v. State, 32 Texas Criminal Reports, 431, does not support appellant. The witness can only be impeached by showing that he has been legally charged with some offense, such as a felony or misdemeanor imputing moral turpitude. Brittain v. State, 36 Texas Crim. Rep., 406.

Appellant insists that the court should have directly instructed the jury that Maddox, the officer before whom the acknowledgments to the deeds were taken, was an accomplice, as well as Burke and Nicholson. While the court did not instruct the jury that Maddox was an accomplice, the court did instruct the jury on the law of accomplice testimony with reference to Maddox, and told them distinctly, if they found he was an accomplice, that they could not corroborate Burke and Nicholson with his testimony, and that they could not convict defendant unless they found that there was other testimony in the case corroborative of the accomplices' testimony and tending to connect appellant with the commission of the offense. The record clearly shows a difference in the attitude of the witnesses Burke and Nicholson and the witness Maddox on the subject of accomplices' testimony. The two former were confessed accomplices. As to the latter, while there is testimony strongly suggesting his implication in the case as an accomplice, yet he strenuously denied this, and in his evidence made a very plausible explanation as to his connection with the case, and how he came to take the certificate of acknowledgment as he did,—that is, he explained how he came to certify that Nicholson, who executed and acknowledged the deed as Felps, was personally known to him; and, in our opinion, under the evidence, it was proper for the court to submit the question as to Maddox being an accomplice to the jury. On this point counsel refer us to Barrara v. State, 42 Texas, 260, and Williams v. State, Id., 392. We have examined the cases, and, in our view, they do not bear out

the contention of appellant. Indeed, the first named case supports the action taken by the learned judge who tried this case. There is no evidence here that the former case against the witness Maddox was dismissed on account of any agreement between him and the State that the dismissal should be in consideration of his testifying in this case. We quote from Barrara's case, supra: "It will hardly be contended that where the witness denies, either tacitly or expressly, the fact of his complicity, but there is other evidence establishing, or tending to establish it, that the defendant is not entitled to the benefit of an instruction on the hypothesis that the jury may regard the witness as an accomplice. We have substantially ruled in the case of Garrett v. State (decided at the recent session at Tyler), 41 Texas, 530, that, where there is evidence tending to criminate the witness, the question may be submitted to the jury." In Zollicoffer v. State, 16 Texas Criminal Appeals, 312, it was held that the better practice is for the court to submit the question of whether or not a witness is an accomplice under proper instruction, defining what an accomplice is. Martin v. State, 38 Texas Crim. Rep., 462.

Appellant in his motion for new trial, strenuously urges that the conviction can not stand, on the ground that Burke, Nicholson, and Maddox are all accomplices, and there is absolutely no testimony tending to corroborate them and to connect appellant with the offense charged. If it be true that Maddox is an accomplice,—and there is no controversy as to this,—then, if it be conceded that the jury may have found otherwise, still it would be the duty of this court to reverse the case, unless there is testimony, outside of these three witnesses, corroborating them, and tending to connect appellant with the commission of the offense; for we fully recognize the doctrine that the verdict of the jury on this question is not binding, in the face of overwhelming testimony showing him to be an accomplice. As stated before, Maddox did not confess himself an accomplice, nor is there any evidence in the record of an agreement between him and the State that the case against him was dismissed in consideration that he should testify against appellant. It is conceded that there is strong testimony in the case indicating or tending to show him to be an accomplice, but he denied this, and explained the method of his taking the acknowledgment of Nicholson, who signed the name of Felps to the deed, in a manner that is at least plausible, and we can not say that the jury were bound to disbelieve him. They may have found that he had no criminal connection with the execution of the deed, but acted merely in a ministerial capacity in taking the acknowledgment. If they were authorized to do this, then it may be assumed, in support of the verdict, that they did this; and, if the jury did not regard him as an accomplice, then, in our opinion, his testimony corroborates the evidence of Nicholson and Burke, the confessed accomplices, and tends to connect appellant with the commission of the offense. But if it be conceded that Maddox was an accomplice, then it occurs to us there is testimony outside of these

three witnesses, corroborating them, and tending to connect appellant with the commission of said offense. Appellant cites us to a number of circumstances from the record that would suggest a want of corroboration by extraneous testimony. The question, however, is, are there facts and circumstances in the record, fairly considered, which tend to connect appellant with the commission of the offense? We cull the following from the evidence, which, in our opinion, tends in that direction: According to appellant's own testimony, reproduced from a former trial, he was present at the time the forged instrument was executed and acknowledged. The accomplices say that he gave direction as to the taking of the acknowledgment, and insisted that it should be taken by an officer who knew the assumed vendor Felps. Preston was a lawyer, and, from his vocation, familiar with the rules regulating the conveyance of real estate. Burke and Nicholson, alias Felps, were not lawyers,—the one was a horse trader and the other a painter,—and not likely to know how an acknowledgment should be taken. Appellant alone, it seems, knew the necessity of having the certificate of acknowledgment show the important fact of a personal acquaintance by the officer with the alleged vendor, Nicholson, alias Felps. The testimony of outside witnesses establishes the fact that defendant lived in Atascosa County, and that neither Burke nor Nicholson lived there. Burke lived in San Antonio, and was known to appellant; and Nicholson, alias Felps, lived there also, though in the deed he assumed to be from Grimes County. The land was situated in Atascosa County, and Preston was desirous of purchasing the same. The record shows that he had requested Burke to look up Felps, the owner of the land in question, in order that he might purchase it from him. Burke is not shown to have had any such desire. Indeed, it is strongly suggested by the testimony that he was impecunious, and exceedingly unlikely to have $500, the consideration expressed in the deed from Felps to him, with which to buy the land. Burke states (and the record supports him in this) that he made nothing by the purchase and sale. The consideration expressed in the deed to him was $500, while the consideration expressed in the deed from him to appellant was $600. The evidence shows, however, from appellant's own reproduced testimony that he did not claim to have paid $600, but something less than this. The only evidence in regard to value is to the effect that the land was only worth $2.50 an acre, or $400 for the tract. It is a singular fact (if this was a bona fide transaction) that Preston, who knew the land, was paying more than it was worth. And, more than this, from appellant's standpoint, the vendor, Felps, was an absolute stranger to him, yet he made no investigation respecting him to ascertain his identity as the owner of the land. The patent was to Felps as a locative interest, and he should have been at least 24 years old in 1876, when the patent was issued, yet the man Nicholson, who personated Felps, and whom appellant recognized at a former trial of the case as the Felps who conveyed the land, in 1876 was only 14 years old, and in 1893, when the land

was conveyed, was only 31 years old. Neither his appearance as to age, nor the surrounding circumstances attending the transaction, appear to have suggested to appellant any inquiry as to his identity. The proof shows that appellant kept the deeds from the record for a year, thus trusting a mere stranger, who during all that time was in a position to defraud him by another sale of the premises. And it is significant, too, that the conveyance was not made directly from Felps to appellant, but two deeds were required, when one would have answered the purpose of an honest transfer. The assumed accomplices, in our opinion, show that appellant was present at the execution of the deeds, and that the deed from Nicholson, alias Felps, to Burke, and the deed from Burke to him, were executed at the same time, and were a part of the same transaction. The extraneous testimony shows that the trade was made for appellant's benefit; that appellant supervised and directed the same, being the master spirit on that occasion; that Burke was a mere conduit; and that the whole trade was consummated for appellant's benefit. This is the effect of the outside testimony, and it corroborates the testimony of Burke, Nicholson, and Maddox (if it be deemed that the latter is an accomplice) ; and these facts tend to connect appellant with the offense charged,—that is, they tend to show that he was present at the time and knew that the deed from Felps to Burke was a forgery, and that when he filed the deed for record with the clerk of Atascosa County, he had this guilty knowledge.

The court's charge sufficiently informed the jury as to the use they could make of the deed from Burke to Preston, and there was no error in the action of the court in failing to give the requested charge on this subject.

Appellant complains that the court refused to give his special requested charge number 8, instructing the jury that they could consider certain testimony as a test in determining the matter of the forgery of the deed in question. We find no bill of exceptions to the refusal of the court to give the requested charge, and no complaint as to such refusal in the motion for new trial. However, the court was not required to single out this testimony, and give a special charge upon it.

Appellant also insists that a new trial should have been granted him on newly discovered evidence. As to some of the witnesses, it appears, by the least diligence, appellant might have discovered their testimony. This is especially true as to the witness T. H. Franklin, who was of counsel on the trial of the forgery. Furthermore, the newly discovered testimony appears to be, some of it cumulative, and some of it of an impeaching character. We do not believe the court erred in overruling said motion. The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—An opinion was rendered at a former day of this term affirming this case, and it now comes before us on motion for rehearing. Appellant only calls in question the correctness of the opinion heretofore rendered in two particulars: First, he says that the court erred in permitting the witness Spain to reproduce the testimony of appellant given at a former trial of the case; second, he maintains that Burke and Nicholson, alias Felps, are confessed accomplices, and the record fails to disclose any testimony corroborating the accomplices.

In regard to the first proposition, it is insisted that the decision in Collins v. State, 39 Texas Criminal Reports, 441, does not apply; and in this connection it is urged that Collins was a witness at a former trial, and was also a witness on his own behalf at a subsequent trial, and that his testimony given at a former trial was used to impeach or contradict him. This, appellant says, was admissible, because he was a witness at both trials. Appellant further says "that this is all quite true and sound, when applied, as it was in the Collins case, to the evidence of a testifying defendant, but it has no bearing at all where a defendant does not testify." In reply to this proposition, we are constrained to say that appellant evidently misapprehends the Collins case, and the reason urged by appellant in said case why the testimony of the defendant could not be reproduced. The objection there urged was that a defendant's testimony at a former trial could not be reproduced against him at a subsequent trial, because it was a statement of the defendant made while under arrest, and no warning such as is required by the statute was shown to have been given; and that decision was predicated upon the idea that a warning in such case was not necessary; that when appellant took the stand on his own behalf, though for the time being he might be under arrest, yet he was in the presence of the court; and that his giving the testimony was free and voluntary, —thus placing his statement or confession on the same plane as a confession made out of court when not under arrest, or a statement or confession made under arrest after having been duly warned. And it occurs to us, as was said in that case, that any other rule would place a defendant's testimony, given on his own behalf, under a ban and at a disadvantage. If the rule contended for by appellant be correct, then it would be impossible to prosecute a defendant testifying on his own behalf for perjury, unless he had been duly warned before he gave in his testimony, as his testimony given without any warning could not be reproduced against him in a trial for perjury. While our statute says that the former conviction can not be alluded to at a subsequent trial, this affords no reason why testimony given at a former trial can not be reproduced, and such testimony would not necessarily suggest a former conviction. Nor does the fact that the statute inhibits any reference to the failure of a defendant to testify furnish any reason why testimony given by him at a former trial can not be reproduced,

—no more so than an instruction by the court telling the jury, in the terms of the statute, that they will not consider the failure of defendant to testify in the case as a circumstance against him.  As stated above, the whole question with reference to the reproduction of a defendant's testimony given at a former trial resolves itself into the proposition as to whether or not this procedure is a violation of the statute with reference to confessions of a defendant made while under arrest; and on that subject we adhere to the opinion heretofore rendered in the Collins case, supra, and followed in this case,—that, when a defendant takes the stand on his own behalf, he does so with full knowledge of his rights in the premises, and on a subsequent trial of the case it is competent for the State to introduce such evidence against him, although he may not take the stand at the subsequent trial.

Appellant, in the able brief filed on rehearing, discusses thoroughly and elaborately the question as to the corroboration of the accomplices by testimony aliunde, and calls the court's attention to several assumed misstatements on the part of the court.  Among other things, he urges that the record furnishes no data showing, as the court stated, that Felps' certificate was a locative interest.  We have examined the statement of facts in that particular, and find that we were in error in so stating.  However, the main fact in connection with said statement was as to the age of the grantor.  This would make a difference of only about three years, and we do not consider it material.  The main fact to which we called attention was that the grantor, Felps, in 1893 should have been a number of years older than Nicholson, alias Felps, was at that time.

As to the matter of corroboration of the confessed accomplices, we fully discussed that in the original opinion, and cited therein a number of circumstances introduced in evidence tending, in our opinion, to show corroboration.  While these facts and circumstances do not show positive knowledge on the part of Preston at the time he uttered the alleged deed that same was forged, yet, in our opinion, they not only were sufficient to put Preston upon notice that the said deed was forged, but the circumstantial evidence showed that he had actual knowledge at the time he passed it that it was forged; and we apprehend it will not be contended by appellant that this guilty knowledge can not be proved by circumstantial testimony.  In the view we take of it, the circumstantial testimony is of an overwhelming character, and tends strongly to corroborate the accomplices' evidence.  The motion for rehearing is accordingly overruled.

*Motion overruled.*

DAVIDSON, Presiding Judge, absent.